IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

SENN BROTHERS, INC.,              *
                                  *
        Plaintiff,                *
                                  *
        v.                        *        CV 119-196
                                  *
HEAVENLY PRODUCE PALACE LLC        *
and LEAIRRA JEAN MORENO,           *
                                  *
        Defendants.               *

                        O R D E R

    Before the Court is Plaintiff's motion for entry of default
judgment.  (Doc. 9.)  For the following reasons, Plaintiff's motion
is **GRANTED IN PART** and **DENIED IN PART**.


                    **I. BACKGROUND**

    Plaintiff initiated the present action primarily under the
Perishable Agricultural Commodities Act ("PACA"), specifically, 7
U.S.C. ¶ 499e(c).  (Compl., Doc. 1, ¶ 6.)  Plaintiff also asserts
a state law breach of contract claim against Defendant Heavenly
Produce Palace LLC ("Heavenly Produce").  (Id. ¶¶ 24-28.)

**A. The Complaint**

    Plaintiff's business, principally located in West Columbia,
South Carolina, is buying and selling wholesale produce.  (Id.
¶ 3.)  From March 2, 2019, to June 18, 2019, Plaintiff sold and

delivered $21,785.50 worth of wholesale produce to Defendants. (Id. ¶ 7; Compl. Ex. 2, Doc. 1-3, at 1.)   Defendants, located in Augusta, Georgia, are also in the wholesale produce business, and Plaintiff delivered the produce to Defendants in Augusta.   (Compl., ¶¶ 4, 5; see id. ¶ 7.)   Accordingly, the produce travelled in interstate commerce.   (Id. ¶ 7.)

Although Defendants accepted the delivered produce, Defendants never produced payment for the deliveries.   (Id. ¶ 8.) Plaintiff became a beneficiary of the PACA statutory trust protections for produce suppliers.   (Id. ¶ 9.)   Plaintiff placed language enumerated in 7 U.S.C. § 499e(c)(4) on the face of its invoices to Defendants, thereby preserving its interest in the PACA trust for the total amount.   (Id. ¶ 10; ·Compl. Ex. 2.)

**B. Case History**

Plaintiff filed an affidavit of service showing personal service of Defendants.   (Doc. 6.)   On December 3, 2019, Plaintiff filed for entry of default pursuant to Federal Rule of Civil Procedure 55(a).   (Doc. 7.)   The Clerk thereafter entered default on December 4, 2019.   (Doc. 8-2.)   On December 20, 2019, Plaintiff filed the present motion, and Defendants are yet to appear or otherwise defend this action.

**C. Motion for Entry of Default Judgment**

Plaintiff asserts that, as a result of their default, Defendants are jointly and severally liable under PACA in the

2

amount of $21,785.50 for their failure to pay for the delivered produce and Defendant Heavenly Produce is liable for breach of contract. (Br. Supp. Mot. for Default J., Doc. 9-1, at 2-6, 7.) Plaintiff also requests contractual interest on the principal amount owed in the amount of $3,139.01. (Id. at 6, 7.) Finally, Plaintiff seeks attorneys' fees and costs in the amount of $3,082.50. (Id. at 6-7.)

## II. DISCUSSION

### A. Legal Standard

Under Federal Rule of Civil Procedure 55, a court may enter default judgment against a defendant when (1) both subject matter and personal jurisdiction exist, (2) the allegations in the complaint state a claim against the defendant, and (3) the plaintiff shows the damages to which it is entitled. See Pitts ex rel. Pitts v. Seneca Sports, Inc., 321 F. Supp. 2d 1353, 1356-58 (S.D. Ga. 2004). "[A] defendant's default does not in itself warrant the court in entering a default judgment." Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975). Default judgment is merited only "when there is a sufficient basis in the pleadings for the judgment entered." Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015) (citation and internal quotation marks omitted). And although a "defaulted defendant is deemed to admit the plaintiff's

3

well-pleaded allegations of fact, he is not held to admit facts that are not well-pleaded or to admit conclusions of law." <u>Id.</u> (citation omitted).

## B. Analysis

The Court turns to Plaintiff's motion for entry of default judgment.  The Court first addresses whether Plaintiff seeks entry of default judgment pursuant to Rule 55(b)(1) or 55(b)(2) before proceeding to the merits of the motion.

### 1. <u>Clerk or Court Entry of Default Judgment</u>

At the outset, Plaintiff requests entry of default judgment under Rule 55(b)(1) or 55(b)(2).  (Br. Supp. Mot. for Default J., at 1.)  As Plaintiff correctly notes, "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk . . . must enter judgment." FED. R. CIV. P. 55(b)(1).  "In all other cases, the party must apply to the court for a default judgment." <u>Id.</u> 55(b)(2).  Plaintiff's brief contends Defendants owe Plaintiff a sum certain.  Courts in the Eleventh Circuit, however, do not consider the reasonableness of attorneys' fees a sum certain under Rule 55.  <u>See, e.g.</u>, <u>Lubin, Sarl, a French Co. v. Lubin N. Am., Inc.</u>, No. 1:13-CV-2696-AT, 2014 WL 11955396, at *1 (N.D. Ga. Apr. 10, 2014) ("Plaintiff demanded attorney's fees, which are not a sum certain."); <u>Synovus Bank v. ACCU V</u>, No. 11-0116-WS-B, 2012 WL 4760780, at *1 n.1 (S.D. Ala. Oct. 4, 2012) ("Because the plaintiff seeks attorney's fees and expenses as part

of its contractual recovery, and because the reasonableness of such fees and expenses cannot 'be made certain by computation,' entry of default judgment must proceed from the Court under Rule 55(b)(2).").  The Court interprets Plaintiff's motion for entry of default to be pursuant to Rule 55(b)(2) requiring the Court's action.

   2. <u>Jurisdiction</u>

   Before entering default judgment, the Court must ensure it possesses subject matter jurisdiction over the case and that the defendants are subject to personal jurisdiction.  Here, the jurisdictional requirements are satisfied.  Plaintiff's PACA claims arise under federal law, and therefore, federal question subject matter jurisdiction under 28 U.S.C. § 1331 grants the Court jurisdiction over those claims.  Additionally, PACA expressly provides federal courts with jurisdiction to entertain "actions by trust beneficiaries to enforce payment."  7 U.S.C. § 499e(c)(5). Further, the Court may exercise supplemental jurisdiction over Plaintiff's state law breach of contract claim under 28 U.S.C. § 1367.

   As for personal jurisdiction, Plaintiff alleges that Defendant Heavenly Produce's principal place of business is in Augusta, Georgia.  (Compl., ¶ 4.)  Furthermore, Plaintiff personally served Defendants Heavenly Produce and Moreno in

Augusta, Georgia.   (Aff. of Serv., Doc. 6, ¶¶ 3-4.)   Thus, the
Defendants are subject to personal jurisdiction.

   3. Liability

   Finding  jurisdiction  requirements  satisfied,  the  Court
addresses  Plaintiff's  various  claims  that  are  the  subject  of
Plaintiff's motion for entry of default judgment.

   a. *PACA Claim as Against All Defendants*

   "PACA   regulates   the   sale   of   perishable   agricultural
commodities  to  protect  produce  sellers  from  unscrupulous  or
insolvent  dealers,  brokers,  and  commission  merchants."   Country
Best v. Christopher Ranch, LLC, 361 F.3d 629, 631 (11th Cir. 2004).
"The  Act  requires  licensing  of  all  entities  qualifying  as
commission   merchants,   dealers,   and   brokers   in   perishable
agricultural  commodities,  and  provides  for  various  remedies  that
may be enforced either through a complaint filed with the Secretary
of  Agriculture,  or  through  an  action  in  any  court  of  competent
jurisdiction."   Id. at 631 (quoting Endico Potatoes, Inc. v. CIT
Grp./Factoring, Inc., 67 F.3d 1063, 1066-67 (2d Cir. 1995)).   In
interstate  transactions  involving  agricultural  commodities,  PACA
requires that:

> [T]hose commodities or their proceeds "shall be held by
> such commission merchant, dealer, or broker in trust for
> the benefit of all unpaid suppliers or sellers of such
> commodities or agents involved in the transaction, *until
> full payment of the sums owing in connection with such
> transactions* has been received by such unpaid suppliers,
> sellers, or agents."

Id. at 632 (emphasis in original) (quoting 7 U.S.C. § 499e(c)(2)). To succeed on a claim to enforce the PACA trust, a plaintiff must show:

> (1) plaintiff is a PACA licensee; (2) plaintiff sold Produce; (3) the buyer was subject to the trust provisions of PACA; (4) the Produce traveled through interstate commerce; (5) plaintiff preserved [its] PACA trust rights by providing requisite notice to the buyer; and [(6)] the buyer has not made full payment on at least some of the produce provided by plaintiff.

Classic Harvest LLC v. Freshworks LLC, No. 1:15-cv-2988-WSD, 2017 WL 2350212, at *16 (N.D. Ga. May 31, 2017) (quoting Spada Props., Inc. v. Unified Grocers, Inc., 121 F. Supp. 3d 1070, 1077 n.2 (D. Or. 2015)).

Here, beginning with Defendant Heavenly Produce, Plaintiff sufficiently establishes Defendant Heavenly Produce's liability under PACA.  First, Plaintiff is a PACA licensee.  (Pl.'s PACA License, Doc. 9-3.)  Second, as noted, Plaintiff alleges that it sold wholesale produce, provides invoices to that effect, and presents an account statement dated September 9, 2019, revealing an outstanding balance in the amount of $21,785.50.  (Customer Statement, Doc. 9-6.)  Third, the Court accepts as true that Defendant Heavenly Produce received wholesale produce and was subject to licensure under PACA.  (Compl., ¶¶ 3, 7, 8; see also Senn Decl., Doc. 9-2, ¶ 4.)  Fourth, the produce allegedly travelled in interstate commerce, at a minimum, from South Carolina

to Georgia.   Fifth, Plaintiff preserved its PACA trust rights by placing relevant language pursuant to 7 U.S.C. § 499e(c)(4) on its invoices to Defendant Heavenly Produce.   (Compl., ¶ 10; Compl. Ex. 2; Senn Decl., ¶ 10.)   Sixth, Defendant Heavenly Produce never made payment on the delivered produce.   (Compl., ¶ 8; Senn Decl., ¶ 12.)   As a result, Plaintiff demonstrates Defendant Heavenly Produce's liability under PACA.

Finding Defendant Heavenly Produce liable under PACA, the next issue is whether Defendant Moreno is also liable.[1]   This District has entered default judgment against individual defendants who are officers, directors, investors, shareholders, or employees of the produce purchaser.   Baker & Murakami Produce Co. LLLP v. Weng Farms Inc., No. CV418-0252, 2019 WL 5491895, at *2, *4-5 (S.D. Ga. Oct. 24, 2019) (finding entry of default judgment against individuals "for breach of their fiduciary duties as the trustees of [the purchaser's] PACA trust.").   As the Third Circuit found, several United States Courts of Appeals agree that "individual officers and shareholders, in certain circumstances, may be held individually liable for breaching their fiduciary duties under PACA."   Weis-Buy Servs., Inc. v. Paglia, 411 F.3d 415, 421 (3d Cir. 2005) (collecting cases).   Plaintiff shows that Defendant Moreno is in a position of control over Defendant

---

[1] Defendant Moreno is not currently on active duty with the military.   (Status Report, Doc. 9-9.)

Heavenly Produce; thus, the law imposes upon her a fiduciary responsibility as trustee of Defendant Heavenly Produce's PACA trust. (Compl., ¶ 30; Senn Decl., ¶ 5; see also Credit Appl., Doc. 9-5.) For these reasons, Plaintiff establishes Defendant Moreno's liability under PACA.

   b. *Breach of Contract Claim as Against Defendant Heavenly Produce*

Plaintiff further claims Defendant Heavenly Produce's failure to remit payment for the delivered produce constitutes breach of contract. (Pl.'s Br. Supp. Mot. for Default J., Doc. 9-1, at 4; Compl., ¶¶ 24-28.) At the outset, the Court notes that a cause of action under PACA does not preclude a common law breach of contract claim. "PACA liability may be enforced . . . (2) by suit in any court of competent jurisdiction; but this section shall not in any way abridge or alter the remedies now existing at common law or by statute, and the provisions of this chapter are in addition to such remedies." 7 U.S.C. § 499e(b). "The Eleventh Circuit has held that breach of contract, as a 'common law remedy, is expressly referenced in PACA as being separate, and in addition to, a remedy under PACA.'" Classic Harvest, 2017 WL 2350212, at *16 (quoting Paris Foods Corp. v. Foresite Foods, Inc., 278 F. App'x 873, 875 (11th Cir. 2008)). Therefore, Plaintiff may seek liability for breach of contract in addition to PACA liability.

Because the breach of contract claim is a common law claim over which the Court exercises supplemental jurisdiction, the Court must determine which state law applies to the claim. Because Plaintiff brought this action in district court in Georgia, Georgia's conflict of laws rules "determine which state's law applies." Bryan v. Hall Chem. Co., 993 F.2d 831, 834 (11th Cir. 1993). Georgia honors choice of law provisions "unless no reasonable basis exists for doing so or, application of the chosen state's law is contrary to a fundamental policy of Georgia which has a materially greater interest in the issue than the chosen state." Id. The invoices in question all state, "This agreement shall be construed pursuant to the laws of South Carolina." (Invoices, Doc. 9-7.) Because Plaintiff is a South Carolina citizen, applying South Carolina law is not unreasonable. See Bryan, 993 F.2d at 834.

Under South Carolina law, "[t]he elements for a breach of contract are the existence of a contract, its breach, and damages caused by such breach." Johnson v. Little, 827 S.E.2d 207, 210 (S.C. Ct. App. 2019). Based on the record, there is little doubt that to the extent a contract existed, Plaintiff breached it and damages resulted. Therefore, the question is whether the Parties entered into a contract. "South Carolina common law requires that, in order to have a valid enforceable contract, there must be a meeting of the minds between the parties with regard to all

10

essential and material terms of the agreement." Player v. Chandler, 382 S.E.2d 891, 893 (S.C. 1989) (emphasis omitted).

Because this is a transaction for the sale of goods and there is no single written contract, the Court looks to South Carolina's adopted version of the Uniform Commercial Code ("UCC") for the existence of a contract. See Triple E, Inc. v. Hendrix & Dail, Inc., 543 S.E.2d 245, 247, 247 n.7 (S.C. Ct. App. 2001) (noting the UCC governs an action for the sale of goods). Under the UCC, the delivery and acceptance of goods without rejection constitutes a binding agreement and entitles the seller to the contract price. Plantation Shutter Co. v. Ezell, 492 S.E.2d 404, 480-81 (S.C. Ct. App. 1997). Because Plaintiff asserts it delivered the produce to Defendant Heavenly Produce, Defendant Heavenly Produce accepted the produce, and Defendant Heavenly Produce failed to pay for the produce, Plaintiff establishes Defendant Heavenly Produce's liability under the contract.

4. Damages

Even with a default judgment, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." Anheuser-Busch, Inc. v. Philpot, 317 F.3d 1264, 1266 (11th Cir. 2003).

a. Contract Price

Plaintiff's contractual damages are a sum certain, and therefore, the Court concludes that Plaintiff is entitled to

$21,785.50 resulting from Defendants' failure to make payment on the delivered produce.

> b. *Interest*

As allowed under PACA, Plaintiff requests interest and attorneys' fees arising out of Defendants' failure to pay for the delivered produce.   Plaintiff contends the terms provided in the invoices determine the relevant interest rate.   (Br. Supp. Mot. for Default J., at 6.)   PACA contemplates "full payment of the sums owing in connection with commodities transactions." Country Best, 361 F.3d at 632 (emphasis omitted) (citing 7 U.S.C. § 499e(c)(2)).   The Eleventh Circuit interpreted this language to include "attorney fees and interest." Id.   "A contractual claim for attorneys' fees, costs, and interest can arise from invoices that reserve a party's right to attorneys' fees and interest." Baker & Murakami Produce, 2019 WL 5491895, at *6.

The invoices Plaintiff provided Defendant Heavenly Produce preserved Plaintiff's right to interest in the amount of 24% per annum upon failure to remit payment.   (See Invoices.)   Plaintiff submits allegations, affidavits, and an interest calculation in support of its claim to $3,139.01 interest on the unpaid principal. (Compl., ¶¶ 35-36, Senn Decl., ¶ 12; Maxim Decl., Doc. 9-8, ¶ 7; Interest Chart, Doc. 9-10.)   Upon review of Plaintiff's records,

the amount appears accurate.   Accordingly, Plaintiff is entitled
to the claimed interest through December 20, 2019.[2]

        c. *Attorneys' Fees and Costs*

    Turning to the reasonableness of the claimed attorneys' fees,
the Court examines the records submitted using the lodestar method.
Baker & Murakami Produce, 2019 WL 5491895, at *6 (employing
lodestar method to determine proper attorney's fees in PACA
action).   The lodestar method determines attorneys' fees "based on
the product of the reasonable hours spent on the case and a
reasonable hourly rate."   In re Home Depot Inc., 931 F.3d 1065,
1076 (11th Cir. 2019).

        i. Maxim Attorney Fees and Costs

    Plaintiff's counsel, Mr. Maxim, submits a declaration
swearing to the accuracy of his asserted fees and costs.   (Maxim
Decl., ¶¶ 9–11.)   Mr. Maxim attests to performing 2.9 hours of
work on this matter at a rate of $325.00 per hour for a total
amount of $942.50.   (Maxim Decl., ¶¶ 9–11; Maxim Law Firm Invoice,
Doc. 9–11.)   Plaintiff further claims $525.00 in litigation costs:
$400.00 for the filing fee and $125.00 for service of Defendants.
(Maxim Decl., ¶ 11; Maxim Law Firm Invoice.)   Because the claimed

---

[2] Under South Carolina law, "No greater interest than six percent per annum
shall be charged, taken, agreed upon or allowed upon any contract arising in
this State . . . except upon written contracts wherein, by express agreement,
any rate of interest may be charged, except as otherwise provided . . . ." S.C.
CODE ANN. § 37-10-106(1) (1982).   The Court recognizes a potential argument as
to whether Defendants expressly agreed to the interest rate in the invoices.
Nevertheless, as noted, this District has held that invoices may supply the
interest rate term, and the Court agrees.

fees are reasonable and courts generally allow costs for filing and service, the Court grants Plaintiff $525.00 in litigation costs.

Initially, in determining the number of hours reasonably expended, the Court must consider whether the work sought to be compensated was "useful and of a type ordinarily necessary to secure the final result obtained from the litigation." Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 561 (1986) (citation and internal quotation marks omitted). Courts must exclude hours that were "excessive, redundant, or otherwise unnecessary." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983). Analyzing Mr. Maxim's detailed billing statements, the Court concludes Mr. Maxim exerted a reasonable amount of time for his duties performed in this litigation.

Next, the Court evaluates the reasonableness of Mr. Maxim's rate. A reasonable rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988); see also Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). The "going rate" in the community is the most critical factor in setting the fee rate. Martin v. Univ. of S. Ala., 911 F.2d 604, 610 (11th Cir. 1990). The relevant legal community is the division in which the Court sits, here, the Southern District

of Georgia, Augusta Division.  See Knight v. Alabama, 824 F. Supp. 1022, 1027 n.1 (N.D. Ala. 1993) (citing Turner v. Sec'y of Air Force, 944 F.2d 804, 808 (11th Cir. 1991)).  Because the Court itself is considered an expert on hourly rates in the community, it may consult its own experience in forming an independent judgment.  Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994).  Three years ago, this Court set a reasonable billing rate in the Augusta market as $300 per hour.  Whitesell Corp. v. Electrolux Home Prods., Inc., No. CV 103-050, 2019 WL 1714135, at *2 (S.D. Ga. Apr. 17, 2019) (citing Plumbers & Steamfitters Local No. 150 Pension Fund v. Muns Grp., Inc., No. 1:15-CV-200, Doc. 37 (S.D. Ga. Mar. 27, 2017)).

Mr. Maxim possesses significant experience with a diverse litigation practice.  (Maxim Decl., ¶ 4.)  Given Mr. Maxim's meaningful experience, Mr. Maxim's involvement and recognition in the Georgia legal community (id.), and the previously set reasonable market rate in this District, Mr. Maxim's asserted $325.00 hourly rate is appropriate.  Consequently, Plaintiff is entitled to $942.50 for Mr. Maxim's services.

### ii. Diess Attorney Fees

For the first time, in conjunction with the motion for entry of default judgment, the Court is introduced to Plaintiff's co-counsel, Louis W. Diess of Washington, D.C.  (See Diess Decl., Doc. 9-12, ¶ 1.)  Nothing in the record reveals Mr. Diess to be a

member of either the District's Bar or the Georgia Bar, that he sought to appear *pro hac vice*, or that he otherwise signed any pleading or appeared in this action. Courts in this Circuit have concluded that an attorney assisting in a lawsuit without obtaining admission to the Court provides support services similar to a paralegal. See, e.g., Rabco Corp. v. Steele Plaza, LLC, No. 6:16-cv-1858-Orl-40LRH, 2019 WL 5188601, at *5 (M.D. Fla. July 29, 2019); Jones v. Saul, No. CV 118-010, 2019 WL 4879135, at *2 (S.D. Ga. July 1, 2019). As part of their discretion, district courts may reduce a non-admitted attorney's rate to a paralegal rate. See Callaway v. Acting Comm'r of Social Sec., ___ F. App'x ___, 2020 WL 1158470, at *3 (11th Cir. Mar. 10, 2020).

"[F]ederal courts are accorded certain inherent powers" to "manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Sahyers v. Prugh, Holliday & Karatinos, P.L., 560 F.3d 1241, 1244 (11th Cir. 2009) (citation omitted). "A federal court may wield its inherent powers over the lawyers who practice before it." Id. The Court's Local Rules establish procedures for obtaining admission to practice in the Southern District of Georgia. LR 83, SDGa. The Court possesses discretion to incentivize compliance with its Local Rules while simultaneously avoiding the harsh sanction of completely striking an attorney's fees.

16

With the foregoing settled, the Court reduces Mr. Diess's fees.   Mr. Diess submitted a declaration revealing extensive experience focused primarily on PACA matters.  (Diess Decl., ¶¶ 2-3.)   The accompanying billing statement establishes Mr. Diess committed 3.8 hours to this matter at a rate of $425.00 per hour. (McCarron & Diess Invoice, Doc. 9-13.)   First, the time Mr. Diess spent working on this litigation is reasonable after review of his detailed descriptions for his work.   Second, as for the rate, the Southern District of Georgia, Augusta Division, generally allows a paralegal rate of $75.00 per hour.   Jones, 2019 WL 4879135, at *2.   The Court elects to increase the paralegal rate, in this case only, to $125.00 in light of Mr. Diess's experience and specialization in PACA litigation. See Callaway, 2020 WL 1158470, at *4.   Accordingly, Plaintiff is awarded attorney's fees for Mr. Diess's services in the amount of $475.00 (3.8 hours at a rate of $125.00 per hour).   In total, Plaintiff is entitled to $1,942.50 in attorneys' fees and costs.

### III. CONCLUSION

For the aforementioned reasons, Plaintiff's motion for entry of default judgment (Doc. 9) is **GRANTED IN PART** and **DENIED IN PART**. The Court **GRANTS** the motion with respect to liability, contract damages in the principal amount of $21,785.50, interest in the amount of $3,139.01, litigation costs in the amount of $525.00,

attorney's fees for Mr. Maxim in the amount of $942.50, and attorney's fees for Mr. Diess in the amount of $475.00, for a total recovery of $26,867.01.[3]  The Court **DENIES** the motion with respect to the remainder of the requested attorney's fees for Mr. Diess in the amount of $1,140.00.  The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Plaintiff and against Defendants, jointly and severally, in the amount of $26,867.01; **TERMINATE** any remaining motions and deadlines, if any; and **CLOSE** this case.

    **ORDER ENTERED** at Augusta, Georgia, this ⎽⎽4th⎽⎽ day of ⎽⎽⎽⎽⎽⎽⎽⎽⎽⎽, 2020.

                             J. RANDAL HALL, CHIEF JUDGE
                             UNITED STATES DISTRICT COURT
                             SOUTHERN DISTRICT OF GEORGIA

---

[3] Plaintiff's motion for entry of default judgment requests total damages in the amount of $25,449.01. (Mot. for Default J., Doc. 9, at 1-2.)  Plaintiff asserts this total is comprised of $21,785.50 in principal, $3,139.01 in interest, and $3,082.50 in attorneys' fees and costs.  (Id. at 2.)  According to the Court's math, the individual figures provided add up to $28,007.01, not $25,449.01.  The Court interprets Plaintiff's motion to request the total of the principal, interest, and attorneys' fees and costs rather than the incorrectly calculated total figure.